UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-234-KSF

VICKI L. MOORE                                                                                        PLAINTIFF

v.                                      **OPINION & ORDER**

MICHAEL J. ASTRUE, Commissioner of
Social Security                                                               DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \* \*

The plaintiff, Vicki L. Moore, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying her claim for Supplemental Security Income ("SSI") based on disability. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I.      OVERVIEW OF THE PROCESS**

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge must follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

(1)      If the claimant is currently engaged in substantial gainful activity, she is not disabled.

(2)      If the claimant is not doing substantial gainful activity, her impairment must be severe before she can be found disabled.

>   (3)  If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.
>
>   (4)  If the claimant's impairment does not prevent her from doing past relevant work, she is not disabled.
>
>   (5)  Even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc), she is not disabled.

*Id.* The burden of proof is on the claimant throughout the first four steps of this process to prove that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the administrative law judge reaches the fifth step without a finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider her residual functional capacity, age, education, and past work experience to determine if she could perform other work. If not, she would be deemed disabled. 20 C.F.R. 404.1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999).

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, the court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## II.   THE ADMINISTRATIVE DECISION

In this case, the ALJ conducted a hearing on April 26, 2006, and issued her opinion denying Moore's application for SSI benefits on August 24, 2006. [TR 411, 14]  At the time of the ALJ's decision, Moore was 44 years old.  Moore filed for supplemental security income on November 10, 2004, alleging an onset date of October 15, 1994. [TR 46] She has no previous substantial gainful employment, although she did graduate from high school.  [TR 415] Moore claims that she is disabled due to diabetes, scoliosis, nerve damage and thyroid problems.  [TR 57]

The ALJ began her analysis at step one by determining that Moore has not engaged in any substantial gainful activity since her alleged onset date of October 15, 1994. [TR 16]  At step two, the ALJ found that Moore suffers from the severe impairments of diabetes mellitus and adjustment disorder with depressed mood. [TR 16] Continuing on to the third step, the ALJ determined that these impairments or combination of impairments are not associated with clinical signs and findings that meet or equal in severity any of the listed impairments. [TR 16]

Reviewing the administrative record and considering Moore's testimony, the ALJ concluded that Moore maintained the residual functional capacity to sit a total of 6 out of 8 hours, stand/walk

3

a total of 6 out of 8 hours, and lift/carry 25 pounds frequently and 50 pounds occasionally. The ALJ also determined that Moore has limited but satisfactory ability to deal with work stress and understand, remember, and carry out job instructions. [TR 17] Considering the testimony of the vocational expert, the ALJ found that Moore maintains the capacity for limited medium work that exists in a significant number in the economy. [TR 19] Consequently, the ALJ determined that Moore was not disabled within the meaning of the Social Security Act. [TR 20]

The ALJ's decision that Moore is not disabled became the final decision of the Commissioner when the Appeals Commission subsequently denied her request for review on May 11, 2007. [TR 6] Moore has exhausted her administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

### III. ANALYSIS

On appeal, Moore argues that the ALJ's determination was not based on substantial evidence or decided by the proper legal standards for several reasons. Moore's arguments are discussed separately below.

#### A. THE ALJ GAVE APPROPRIATE WEIGHT TO MOORE'S TREATING PHYSICIAN

First, Moore argues that the ALJ failed to give appropriate weight to the opinion of her treating physician, Dr. Gregory Dye. Generally, the ALJ should give controlling weight to a disability opinion by a treating physician if it is well-supported by clinical and laboratory findings and is consistent with other evidence. The ALJ may consider the length and nature of the treating relationship, the supportability of the opinion, consistency, specialization, and any other factors that may be appropriate. *See* 20 C.F.R. § 416.927(d)(2)(2007). The supportability of the opinion

depends on the degree to which the source presents relevant evidence to support the opinion, particularly medical signs and laboratory findings. *See* 20 C.F.R. § 416.927(d)(3)(2007); *see also Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711-712 (6th Cir. 1988). The Sixth Circuit has held that a treating physician's opinion may be "undercut, to a degree, by the absence of underlying objective findings or corroborative clinical evidence." *Sias v. Secretary of Health and Human Services*, 861 F.2d 475, 479 (6th Cir. 1988).

Moore's treating physician, Dr. Dye, determined in a 2006 assessment that Moore could not stand, sit, or walk for more than two hours during an eight hour workday; could only lift less than ten pounds occasionally; and could never climb, balance, crouch, crawl, or kneel. [TR 378-79, 382-85] However, as noted by the ALJ, these physical limitations are inconsistent with Dr. Dye's previous treatment notes, which show that Moore's diabetes was under good control. [TR 17] For example, although Dr. Dye did indicate that Moore suffered from significant issues related to her diabetes and neuropathy and was unable to work, on the same day his treatment note indicates that she was doing very well. [TR 370] One month later, Dr. Dye reported that her glucose was under excellent control. [TR 370] Then, three months later, he reported that Moore had excellent glucose control. [TR 390]

Moreover, despite the significant limitations he diagnosed, Dr. Dye never recommended that Moore go for an X-ray, an MRI, or other diagnostic test; he never referred her to a specialist; and he never prescribed an assistance device such as a cane. As the ALJ noted, Dr. Dye's opinion appears to be based only on Moore's subjective complaints. There is simply no other medical evidence in the record which supports such significant limitations in Moore's ability to sit, stand, walk, or lift.

In fact, Dr. Dye's opinion is contradicted by the opinions of the two state agency medical

consultants who reviewed Moore's medical records. These consultants are highly qualified physicians who are experts in disability evaluation; the ALJ is required to consider their opinions. *See* 20 C.F.R. § 416.927(f)(2)(I). The first consultant, Dr. Saranga, reviewed all of Moore's medical records prior to February 1, 2005, and concluded that she could lift fifty pounds occasionally and twenty five pounds frequently; sit, stand, or walk for six hours in an eight hour workday; and had only occasional balancing limitations. [TR 323-24] The second consultant concurred with Dr. Saranga on March 22, 2005. [TR 332-33] While neither consultant had an opportunity to review Dr. Dye's April 2006 opinion, they did review all of Moore's medical records from the alleged disability onset date (October 15, 1994) through February and March 2005. Included in the records they reviewed are Dr. Dye's January 4, 2005 treatment note, indicating that Moore was "doing very well," had "good results," and "otherwise [had] no sign of complaint or problem." [TR 321] This treatment note is consistent with Dr. Dye's subsequent treatment notes . [TR 321, 370, 377, 390]

Thus, based on (1) the inconsistency between Dr. Dye's treatment notes and his opinion that Moore has significant limitations, (2) the contradictory opinions from the consultant physicians, and (3) the lack of objective medical evidence or other physician opinions supporting Dr. Dye's opinion, the ALJ had good reasons for not giving controlling weight to Dr. Dye's opinion. Therefore, because the record contains and the ALJ's opinion cites "good reasons" for not accepting Dr. Dye's disabling opinion, the ALJ did not err in failing to afford controlling weight to Dr. Dye's opinion.

    **B.    SUBSTANTIAL EVIDENCE SUPPORTS THE MENTAL LIMITATIONS CONTAINED IN THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY AND HYPOTHETICAL TO THE VOCATIONAL EXPERT**

For her second challenge to the ALJ's decision, Moore contends that the ALJ failed to

incorporate the appropriate mental limitations in her residual functional capacity ("RFC") and hypothetical question to the vocational expert ("VE"). According to Moore, the ALJ erred by rejecting the finding of Robert S. Spangler, Ed.D, a licensed psychologist, who checked off "poor/none" for Moore's reliability and ability to complete complex job instruction.

Moore was evaluated by two psychologists. Psychologist Spangler examined Moore on October 13, 2005. While he did check that Moore had "Poor/None" ability to understand, remember and carry out complex job instructions and to demonstrate reliability [TR 365], these check marks are inconsistent with Spangler's subsequent final clinical report dated October 22, 2005 wherein he opines that Moore's adjustment disorder is "in remission" and that she had a "euthymic" (normal, not depressed) mood. [TR 358-59] They are also inconsistent with Spangler's opinion that Moore "generally understood the instruction and demonstrated good concentration;" was appropriately persistent on tasks; was "functioning in the average range of intelligence;" "seemed socially confident;" had "no history of mental health interaction;" was "doing much better;" and had no perceptual abnormalities or illogical language. [TR 357-59] Furthermore, Spangler found that Moore had a global assessment of functioning ("GAF") between 70 and 75. [TR 360] GAF scores between 71 and 80 indicate that if symptoms are even present, they are transient and expectable reactions to psychological stressors. *See* Diagnostic and Statistical Manual of Mental Disorders, Text Revision 2000 (DSM-IV-TR-2000). A person with a GAF between 71 and 80 should have no more than slight impairments in social, occupational, or school functioning. *Id*.

Additionally, the ALJ relied on the findings of Bill Pack, M.S., also a licensed psychologist who evaluated Moore on April 1, 2005. Pack concluded that Moore had good ability to sustain attention and relate to others and a fair ability to understand instructions and adapt to the stresses of

day to day work activity. [TR 317] The opinion of Psychologist Pack, coupled with Psychologist Spangler's final clinical report, provide substantial evidence in support of the ALJ's conclusion that Moore has a "limited but satisfactory ability to deal with work stress and understand, remember, and carry out job instructions." The fact that there is evidence to the contrary, even if that evidence is also substantial, does not warrant reversal so long as there is substantial evidence to support the conclusion reached by the ALJ. *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).

## IV.   CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** that the decision of the Commissioner is **AFFIRMED** as it was supported by substantial evidence and was decided by proper legal standards.

This March 25, 2008.



Signed By:
*Karl S. Forester*  KSF
United States Senior Judge